# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1 | **DATE** | 6/16/2000 |
| **CASE TITLE** | Medina vs. City of Chicago | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■    [Other docket entry]    Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant's motion for bifurcation and stay of discovery is denied.

(11) ■    [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | date docketed | 15 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

JUN 19 2000

|  |  |  |
|---|---|---|
| MARCOS MEDINA, | ) | |
| | ) | |
| vs. | ) | Case No. 00 C 1 |
| | ) | |
| CITY OF CHICAGO, JOHN MADDEN, | ) | |
| and GREGORY BARNES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Marcos Medina alleges that on the night of September 21, 1999, he was accosted, physically attacked, and choked by two plain-clothes Chicago police officers while running from his car to return a videotape to a Blockbuster video store. He was searched and eventually released without being charged with a crime. Medina says he was later treated at a hospital for blurred vision and facial contusions. He did not learn the officers' names but did get the license number from their car. Medina then filed an action against the City of Chicago and "two unknown Chicago police officers" and then, after obtaining some initial discovery, amended the complaint to name John Madden and Gregory Barnes as the officers who allegedly assaulted him.

Medina's claim against the City is that the officers' allegedly unjustified and excessive use of force "was undertaken pursuant to a policy and practice of the Chicago Police Department, to wit, the Department's failure to properly train, supervise, and discipline the officers which the Department assigns to investigate narcotics infractions. In particular, the Department sends certain police officers into the streets of Chicago with instructions no more specific than to

interdict narcotics traffic. Because the Defendant City of Chicago does not properly train and/or supervise said officers, nor adequately discipline them when they commit abuses, in practice, the policy of the Defendant City of Chicago fails to deter and otherwise encourages the type of abuse sustained by Plaintiff." Amended Complaint ¶¶18-19.

The City, joined orally by Madden and Barnes, has moved pursuant to Federal Rule of Civil Procedure 42(b) for a separate trial of the claim against the City, and pursuant to Federal Rule of Civil Procedure 26(b) to stay discovery as to that claim until the claims against the officers have been determined. Medina objects to defendants' request.

## Discussion

In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), the Supreme Court held that a local government can be sued under 42 U.S.C. §1983, but only "when execution of a government's policy or custom . . . inflicts the injury." *Id.* at 694. When the local government's failure to train or discipline its police officers constitutes deliberate indifference to the rights of persons with whom the police come into contact and causes a deprivation of a person's constitutional rights, the local government is liable to that person for his injuries. *E.g., Canton v. Harris,* 489 U.S. 378, 388-89 (1989) (failure to train); *Sledd v. Linsday,* 102 F.2d 282, 288-89 (7th Cir. 1996) (failure to discipline).

A *Monell* claim obviously entails elements of proof that are not involved when the plaintiff sues only the officers claimed to have been directly involved in the deprivation of his rights. In an excessive force case against a police officer, the plaintiff prevails if he proves that the force used by the officer was objectively unreasonable in light of the facts and circumstances confronting the officer. *See Graham v. Connor,* 490 U.S. 386, 397 (1989). Such a claim is

2

focused on the specific incident involving the plaintiff and does not involve, at least in the usual case, inquiry into how the police department trains its officers, whether other officers shown to have used excessive force have been disciplined appropriately, and the like. In short, the decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of discovery and proof.

There is no question that a district court has the discretion to sever a *Monell* claim against a municipality from claims against individual police officers and stay litigation of the *Monell* claim until the rest of the case is resolved. *See Treece v. Hochstetler,* No. 99-1283, 2000 WL 630972, at *4 (7th Cir. May 17, 2000); *Amato v. City of Saratoga Springs,* 170 F.3d 311, 316 (2d Cir. 1999); *Quintanilla v. City of Downey,* 84 F.3d 353, 356 (9th Cir. 1996). A number of district judges in this district and elsewhere have exercised that discretion in favor of bifurcation. *See, e.g., Rockett v. City of Chicago,* No. 98 C 8228 (N.D. Ill. May 27, 1999) (Castillo, J.; oral ruling); *Jones v. City of Chicago,* No. 98 C 5418, 1999 WL 160228 (N.D. Ill. Mar. 10, 1999) (Kocoras, J.); *Farrar v. Davis,* No. 97 C 6433 (N.D. Ill. Aug. 27, 1998) (Plunkett, J.; oral ruling); *Daniels v. Loizzo,* 178 F.R.D. 46 (S.D.N.Y. 1998); *McIntosh v. District of Columbia,* No. 96-0200, 1997 WL 785624 (D.D.C. Dec. 9, 1997); *Keys v. City of Harvey,* No. 92 C 2177, 1996 WL 34422 (N.D. Ill. Jan. 26, 1996) (Nordberg, J.); *Myatt v. City of Chicago,* 816 F. Supp. 1259 (N.D. Ill. 1992) (Aspen, J.). Nothing in these cases, however, *requires* bifurcation in every case. The issue is whether this Court should exercise its discretion to bifurcate the claims in this particular case.

There are a number of advantages to bifurcation. In many if not most cases, disposition of the individual claims will either legally or practically end the litigation. If the plaintiff fails to

prove that he suffered a constitutional injury at the hands of an officer, the officer will prevail at trial, and the finding will (under ordinary circumstances) bar the individual's claim against the municipality. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). If the plaintiff prevails against the officer on his §1983 claim, he is likely not to want or need to proceed any further, at least in this district and state. An Illinois statute directs local governments to pay tort judgments for compensatory damages for which its employees are liable, *see* 745 ILCS 10/9-102; the Seventh Circuit has held that this statute permits the §1983 plaintiff to bring a claim directly against the municipality and obtain a judgment requiring the municipality to pay the amount due to the plaintiff from the officer. *Wilson v. City of Chicago,* 120 F.3d 681, 684-85 (7th Cir. 1997).[1] The municipality is free to dispute whether the officer acted within the scope of his employment – a prerequisite to coverage under the terms of section 9-102 – but *Wilson* has interpreted that term broadly with respect to claims of police misconduct, including excessive force, *see id.* at 685, and municipalities ordinarily do not contest liability for verdicts against their police officers.[2]

Bifurcation, as a general rule, is likely to bring about an earlier end to the litigation against the individual officers, which as described above is likely to end the litigation altogether. The primary reason for the shorter disposition time is that bifurcation permits a bypass of

---

[1] Indeed, the court also held that the plaintiff need not wait until he obtains a judgment against the individual officer to bring his claim against the municipality under section 9-102. *Wilson,* 120 F.3d at 685. Thus plaintiffs in §1983 cases sometimes include a section 9-102 claim in their complaint.

[2] The City has attached to its motion excerpts from its collective bargaining agreement with the police officers' union that appears to provide a further basis for the City to pick up judgments against officers, but it is not clear what, if anything, this adds to section 9-102.

discovery relating to the municipality's policies and practices, which (depending on the size of the police department) can add significant time, effort, and complications to the discovery process. The trial of the claims against the individual officers is also likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims. Bifurcation also avoids claims by the individual officers that they are unfairly prejudiced at trial by the admission of "policy" evidence that involves, for example, how the municipality has dealt with other claims of police misconduct.

With all of these advantages, it is perhaps no surprise that so many district judges have opted in favor of bifurcation. And presumably for many of the same reasons, many (if not most) plaintiffs in §1983 cases filed in this district involving claims of excessive force by police officers – at least those involving the Chicago Police Department, where the burdens of *Monell* discovery and proof are greater due to the department's size – elect not to shoulder the burden of pursuing a *Monell* policy claim. They do so because they do not believe the extra burdens involved in prosecuting such a claim are justified by the benefits they may obtain. The upshot of the combination of 9-102 and *Wilson*'s interpretation of that statute is that from an economic standpoint, a prevailing plaintiff in a §1983 excessive force case against police officers in Illinois gets nothing more from suing the municipality under *Monell* than he would get from suing just the officers. (Punitive damages are not recoverable under 9-102, but they are not recoverable against a municipality under §1983 either. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)). As a result, plaintiffs generally choose to forego the more difficult route of seeking to hold the municipality liable under *Monell*, even if they start out by pleading such a claim. *See Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988) (policy claim against City of

Chicago "has little, probably no, practical consequence" when considering damages because the City indemnifies its employees for torts committed within the scope of their employment).

In the present case, defendants argue that there is nothing practical to gain and a lot to lose by failing to bifurcate the case. The evidence likely to be offered at trial against the City on the *Monell* claim – involving the manner in which the City has trained officers and has dealt with claims of excessive force – likely would not be admitted as to the claims against the individual officers, and defendants claim that the officers will be unfairly prejudiced by that evidence. The trial is likely to be longer, and to no good end, defendants maintain, for the reasons already discussed. And the discovery that will be required with regard to the *Monell* claim will be highly burdensome.

All of these are, no doubt, good reasons to grant defendants' motion. But bifurcation is not a win-win solution. First, there is at least one situation in which a §1983 plaintiff who loses his claim against the officer may still be able to prevail against the municipality under *Monell*. Individual public employees are entitled, where applicable, to the defense of qualified immunity, *see generally Harlow v. Fitzgerald*, 457 U.S. 800 (1982), but municipalities are not. *Owen v. City of Independence*, 445 U.S. 622 (1980). Thus when a plaintiff loses his claim against a police officer based on qualified immunity, he can still recover against the municipality if he can prove a constitutional deprivation caused by a municipal policy or custom. In this situation, bifurcation will not avoid a second trial, and that second trial (of the *Monell* claim) is guaranteed to be in significant part duplicative of the trial of the claims against the individual officers.

Second, there is no guarantee that the municipality, after a verdict against the officer in a bifurcated trial, will concede 9-102 liability. If 9-102 liability is contested, the plaintiff may be

forced to spend significant time litigating the issue. This delays his ultimate recovery and, perhaps just as importantly, effectively reduces the recovery, for 9-102 does not provide for shifting of attorney's fees incurred in establishing 9-102 liability.

Finally, there are other, non-economic benefits that one can obtain from suing a municipality that are less likely when the plaintiff pursues (or is permitted to pursue) only the individual officer. Deterrence of future misconduct is a proper object of our system of tort liability, *see, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 727 (1999), and §1983 claims are a form of tort liability. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 483 (1994). Depending on the size of the verdict and the size of the municipality, as well as other factors, a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its policies and customs. *See Amato*, 170 F.3d at 317-18. As the Second Circuit said in *Amato*,

> The ability to promote an individual official's "scrupulous observance" of the Constitution is important. Perhaps even more important to society, however, is the ability to hold a municipality accountable where official policy or custom has resulted in the deprivation of constitutional rights. A judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality.

*Id.*

Thus far the discussion has been from the standpoint of the litigants. What about the interests of the Court? To the extent that the Court stands as a surrogate of the public interest,

there is no doubt that the public has an interest in the prompt disposition of litigation. *See, e.g.,* 28 U.S.C. §§471-82 (Civil Justice Reform Act, requiring each district court to implement a "civil justice expense and delay reduction plan" to, among other things, "ensure just, speedy, and inexpensive resolutions of civil disputes," *see id.* §471); Fed. R. Civ. P. 1 (Rules of Civil Procedure are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action."). What this means, however, is in the eye of the beholder. Currently the reports that district judges must file twice a year pursuant to the Civil Justice Reform Act requires them to report cases that have been pending for three years or more; that suggests a possible benchmark which could be met with room to spare even if full-blown *Monell* discovery were to go forward in this case. Some courts pride themselves on having ultra-speedy disposition times ("rocket dockets," as they are known in the vernacular). Yet few judges would say that speed of disposition is an end in itself; the statutes and rules cited above use "speed" as a watchword only in conjunction with the concept of "justice." In this case at least, the plaintiff argues that justice includes permitting him to take to judgment his claims against all the defendants he has determined to sue.

At the present time, discovery has just begun. The Court believes that it is far too early to determine that the trial should be bifurcated. Though the Court is cognizant of the possibility of prejudice to the individual officers if the claims are tried together, our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others – even in criminal cases, where a person's liberty is at stake. But more importantly, at this point neither the parties nor the Court has the least idea what evidence actually would be offered at trial on the *Monell* claim or just how prejudicial that evidence might

8

actually be to the officers. On the question of whether a joint trial will unduly and unfairly prolong the trial for the officers, again without knowing what evidence will be offered, the Court cannot at this early stage have any idea at all how much longer a combined trial would be than a bifurcated trial. The Court finds it hard to imagine how a finding of likely unfair prejudice can be made in this or any case without some indication of what the actual prejudice is likely to be – a showing that defendants have not made, and quite frankly cannot make, at this point in the litigation.

In addition, in the present case at least, there is no guarantee that severance would avoid the need for two trials or further litigation regarding payment of a judgment. The officers have not offered to waive the defense of qualified immunity – thus putting into play the possibility of the need for two trials discussed above – and the City has not offered to stipulate (as the municipality did in *Treece v. Hochstetler*) to a judgment against the City for any compensatory damage awarded against the officers. Without a showing that these issues have been taken off the table, the Court cannot conclude that the balance tilts in favor of bifurcation. Indeed, bifurcation of the *Monell* claims at this point, without having a clue what the effects of a joint trial or of bifurcation would be, would amount to a judgment that the defendants' interests in avoiding potential prejudice necessarily outweighs the plaintiff's interest in pursuing the defendants he has chosen to sue and in trying all of his claims together. The Court is not prepared to make that judgment. Within the parameters described above, however, the Court is willing to revisit the issue at a later point in the litigation, when the actual consequences of bifurcation of the trial are likely to be easier to perceive.

That leaves the issue of discovery. Even if the Court is not willing to bifurcate the trial at

this point, that does not mean that discovery must proceed all at once. Federal Rule of Civil Procedure 26(c) permits a court to control the scope and sequence of discovery. In this case, the Court will defer discovery on the *Monell* claim until after the completion of fact discovery on the claims against the individual officers.[3] At that time, the parties and the Court will be able to reassess the case, including the prospects for settlement, the particular municipal policy or custom claimed to be at issue, and the scope of discovery that the *Monell* claim would entail. If the case is not settled at that point, this reassessment will enable the Court to determine whether *Monell* discovery is necessary, and what its proper scope should be.

For the foregoing reasons, defendants' motion for bifurcation and stay of discovery is denied.

MATTHEW F. KENNELLY
United States District Judge

Date: June 16, 2000

---

[3] This does not preclude plaintiff from inquiring of the individual officers at their depositions as to subjects that might also be pertinent to the *Monell* claim.