Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1 | **DATE** | 9/14/2001 |
| **CASE TITLE** | Medina vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, plaintiff's motion for attorney's fees (47-1) is granted. The Court awards plaintiff attorney's fees of $41,650.00 and expenses of $626.00, for a total of $42,276.00.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | SEP 17 2001 date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | date mailed notice |
| OR | courtroom deputy's initials | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

FILED FOR DOCKETING
01 SEP 17 PM 1: 20

Document Number: 57

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCOS MEDINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 00 C 1 |
| ) | |
| CITY OF CHICAGO, JOHN MADDEN, ) | |
| and GREGORY BARNES, ) | |
| ) | |
| Defendant. ) | |

**DOCKETED**

SEP 1 7 2001

## MEMORANDUM OPINION

MATTHEW F. KENNELLY, District Judge:

This action, the first one filed in this Court in the year 2000, has generated more than its share of contentious disputes. The latest concerns plaintiff's request for attorney's fees.

### Background

Plaintiff Marcos Medina claimed in this case that in September 1999, after returning a video tape to a neighborhood store, he was accosted and beaten without provocation by two then-unidentified Chicago police officers. His complaint, filed on January 3, 2000 by attorneys Jon Loevy, Arthur Loevy, and Danielle Loevy, named as defendants "two unknown officers" and the City of Chicago and made claims under 42 U.S.C. §1983 and state law. Eventually Medina amended his complaint to identify his attackers as officers John Madden and Gregory Barnes and to include an allegation that the officers' conduct was undertaken as the result of the City's claimed policy and practice of failing to properly train, supervise, and discipline officers charged with interdicting narcotics traffic.

57

During the course of the litigation, the parties had several fairly contentious discovery-related disputes which required resolution by the Court. Among these was defendants' request to sever plaintiff's claims against the City from the rest of the case and bifurcate discovery accordingly. On that issue, the Court, hopeful (despite the parties' contentiousness) of a negotiated resolution, ordered discovery to proceed on plaintiff's claims against Madden and Barnes and deferred discovery on the "policy" claims pending a settlement conference. The Court declined, however, to bifurcate the policy claim for trial. *See Medina v. City of Chicago*, 100 F. Supp. 2d 893 (N.D. Ill. 2000).

After an unsuccessful settlement conference on November 1, 2000, plaintiff moved ahead with discovery on his "policy" claim. Defendants moved for reconsideration of the denial of their motion to bifurcate, arguing among other things that plaintiff's attorneys were unreasonably obstructing settlement efforts in order to generate more attorney's fees. *See* City of Chicago's Renewed Mot. for Bifurcation, p. 4. Plaintiff's response to that motion, filed on January 4, 2001, included the following statement:

> If Defendants are truly ready to compensate Plaintiff but for the [attorney's fees] issue, then the case can be settled. Plaintiff's standing demand was $45,000 plus attorneys fees of 100 hours. Taking Defendants at their word that the 'plus attorneys fees' part really is the 'primary barrier,' Plaintiff is willing to reduce his total settlement to $25,000 plus 100 hours in reduced-fee rates ($200/hour) such that the total amount paid by the City would equate to the amount Plaintiff had previously sought as compensation for his injuries.

Pltf's Resp. to Chicago's Mot. to Reconsider Bifurcation, pp. 14-15. Defendants did not accept plaintiffs' proposal – at least not soon enough. The Court, after narrowing plaintiff's discovery requests somewhat, denied the City's motion for reconsideration, and discovery proceeded. On February 16, 2001, defendants filed a motion seeking a settlement conference, stating that they

had now "accepted" plaintiff's January 4 proposal but that plaintiff had, in response, upped his settlement demand. The Court held a series of conferences, but the case could not be settled, and the Court did not believe that a binding settlement had been reached based on defendants' belated "acceptance" of the January 4 proposal.

In mid-February, defendants made an offer of judgment pursuant to Fed. R. Civ. P. 68. Defendants offered to allow judgment to be taken against them for $25,001, "plus reasonable attorney's fees and costs *accrued to date* in an amount to be determined by the Court" (emphasis added). Medina accepted the offer of judgment. However, the parties later agreed to resolve the case pursuant to a settlement agreement, rather than by a judgment, evidently in order to expedite payment of the $25,000 to Medina. The settlement agreement was identical to the accepted offer of judgment on the matters at issue here: it stated that the amount of the settlement was $25,000, "plus reasonable attorney's fees and costs accrued to February 14, 2001, in an amount to be determined by the Court."

## Discussion

In his motion for attorney's fees, plaintiff requests fees in the amount of $63,655 and expenses in of $626. Both sides have departed from their agreement that the award of attorney's fees is to cover those "accrued to February 14, 2001." Plaintiff claims attorney's fees through at least June 27, 2001 (just prior to the filing of the fee petition). Defendants contend that attorney's fees should be limited to those incurred prior to January 4, 2001. The Court does not agree with either of them.

Plaintiff is correct that attorney's fees may be awarded under 42 U.S.C. §1988 for litigating a fee petition, *see, e.g., Bond v. Stanton,* 630 F.2d 1231, 1235 (7th Cir. 1980), but the

3

cases he cites did not involve a settlement agreement specifically providing that fees would be awarded only through a certain date. Settlement agreements, like other contracts, are enforced according to their terms. *See Webb v. James,* 147 F.3d 617, 620 (7th Cir. 1998) (settlement agreements are analyzed in the same manner as any other contract). In light of the history of this litigation, it was not particularly surprising, or difficult to predict, that defendants would dispute the amount of plaintiff's attorney's fees. If plaintiff wanted to preserve in the settlement agreement the right to seek attorney's fees for prosecuting his fee petition, he ought to have negotiated for that at the time. Even if plaintiff or his counsel somehow believed that an era of good feeling had dawned, the agreement is clear on its face; it precludes plaintiff from recovering attorney's fees for the period following February 14, 2001.

Plaintiff contends that defendants breached the settlement agreement by making payment six days late – on June 11, 2001 rather than by June 5. Even if this were a material breach, it would not entitle plaintiff to keep the parts of the agreement he likes (the $25,000 plus the undertaking to pay reasonable attorney's fees) and jettison the one part he now dislikes (the February 14 limitation). Just as importantly, plaintiff clearly waived any claim of breach by keeping the proceeds of the settlement and moving ahead with the attorney's fees litigation process – the very process that the agreement contemplated. He cannot backtrack now.

Plaintiff's counsel also contend that "it is not clear that counsel's attorney's fees are Mr. Medina's to waive by agreement in any case." Pltf's Reply in Support of Mot. for Atty's Fees, p. 14. It is difficult to see how counsel can advance this argument with a straight face. Medina did not give up counsel's entitlement to post-February 14 fees under cover of darkness; the same counsel who make this argument participated directly in the preparation and execution of the

4

settlement agreement. Counsel's argument reminds the Court of the police inspector in the movie *Casablanca*: they in effect claim to be shocked – shocked!! – that their fee entitlement has been given away. The Court rejects this claim.

Defendants' argument that fees should be limited to the period before January 4, 2001 fares no better. The short answer – which is the only answer necessary under the circumstances – is that they unequivocally agreed to pay reasonable fees through February 14, 2001. Though defendants could have offered to have judgment entered for $25,000 plus $20,000 in fees, or $25,000 plus reasonable fees accrued through January 4, 2001, they chose not to do so.

Defendants say that post-January 4 fees should be denied based on *Moriarty v. Svec*, 233 F.3d 955 (7th Cir. 2000), but the Court agrees with plaintiff that defendants' argument effectively turns *Moriarty* on its head. In that case, the Seventh Circuit held that when a plaintiff obtains a judgment in an amount less than a settlement offer he had previously rejected, a court may take that fact into account in awarding attorney's fees, and indeed may decline to award fees for the period following the rejection of the offer on the grounds that the attorney's work after that time "provide[d] minimal benefit to the prevailing party." *Id.* at 967. But nothing like that happened here; the January 4, 2001 settlement proposal was *plaintiff's* proposal. And unlike in *Moriarty*, the Court cannot say that the work done by plaintiffs' counsel on and after January 4 provided no significant benefit to plaintiff. Indeed, it is a reasonable interpretation of the events that plaintiff's continued pursuit of the case, by deposing Barnes and successfully obtaining an order compelling production of records of prior citizen complaints in the district where Barnes and Madden worked, prompted defendants to make their February 14 offer of judgment, which as we have pointed out was *better* than plaintiff's January 4 proposal with respect to attorney's fees.

5

Plaintiff's January 4 settlement proposal in no way capped his later recovery of attorney's fees. If defendants wanted to cut off plaintiff's fees on January 4, they should have accepted the proposal then. They chose not to do so, instead litigating various issues before they made their offer of judgment and ultimately settled the case. If the Court nonetheless were to use plaintiff's unaccepted proposal to cap his recovery of attorney's fees, it would chill plaintiffs in cases involving fee-shifting statutes from making settlement proposals, a result that would be counter-productive to the effective administration of justice.

We proceed to determination of plaintiff's reasonable attorney's fees through February 14, 2001. The starting point in deciding a reasonable attorney's fee is to determine the hours reasonably expended by counsel and multiply them by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983). An attorney's reasonable hourly rate is determined based on the market rate for the attorney's services. *See, e.g,. Missouri v. Jenkins,* 491 U.S. 274, 283 (1989). If the attorney has a regular billing rate for comparable work, that is presumptively his market rate. *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 (7th Cir. 1999); *People Who Care v. Rockford Board of Education,* 90 F.3d 1307, 1310 (7th Cir. 1996). But where, as in this case, the attorney does not have a regular billing rate (the Loevys handle all their cases on a contingent-fee basis), a court "should look to the next best evidence – the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care,* 90 F.3d at 1310 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)).

Jon Loevy, lead counsel in this case, is a 1994 law school graduate. He began the private practice of law following a one year stint as a law clerk to a distinguished judge of this Court, and for the past five years he has been engaged in what is for the most part a plaintiffs' civil

6

rights litigation practice. Arthur Loevy has been a lawyer since 1963 but practiced law (exclusively in the labor law field) only through 1970, when, according to his affidavit, he became an official of a labor union. He states that he did not re-enter the practice of law until 1997. Danielle Loevy is a 1995 law school graduate; she was only minimally involved in the present case.

Plaintiff seeks an hourly rate of $265 for Jon Loevy, $300 for Arthur Loevy, and $225 for Danielle Loevy. The only evidence of current rates for other similarly-situated civil rights attorneys (other than a conclusory and therefore unhelpful statement in Jon Loevy's affidavit) comes from Kenneth Flaxman, an experienced plaintiff's civil rights practitioner. Flaxman, who has been a plaintiff's civil rights lawyer for nearly 30 years, states that he was awarded $365 per hour in a recent case, though he does not identify the case or describe anything about it. The entirety of his comment on the hourly rates claimed in this case is the following:

> I am familiar with the current hourly rates of Illinois attorneys specializing in civil rights class actions and other complex litigation, both contingent and non-contingent, and maintain collection[s] of affidavits, surveys, fee agreements, court opinions in the Northern District of Illinois and other documents reflecting such rates. Based on my personal knowledge of the work of Mr. [Jon] Loevy, I believe that an award of $265/hour is modest for an attorney of comparable experience, ability, qualification[s], and reputation in the Northern District of Illinois.

Flaxman Affid. ¶10.

Flaxman's affidavit does not provide sufficient support for the hourly rates claimed by plaintiffs' attorneys. First, he has said nothing about the proposed rates for Arthur and Danielle Loevy. Second, with regard to Jon Loevy, he provides no explanation for *why* he believes $265 per hour is a "modest" rate: have other attorneys with similar experience levels been awarded more? who? in what types of cases? This type of unsupported *ipse dixit* would be insufficient

7

to support an expert's conclusion at a trial, *see Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 156-57 (1999); it is no more sufficient or even persuasive in the present context.

Evidence of a reasonable hourly rate can also come from awards in other cases. *Spegon,* 175 F.3d at 555; *People Who Care,* 90 F.3d at 1312. Plaintiff cites a number of cases in which hourly rates of $300 to $350 were approved, but these involved awards to attorneys with a great deal more experience than any of plaintiff's counsel. *See Batt v. Micro Warehouse, Inc.,* 241 F.3d 891, 895 (7th Cir. 2001) (award $350 per hour to Ernest Rossiello); *Barnett v. City of Chicago,* 122 F. Supp. 2d 915, 916-18 (2000) ($350 per hour to Judson Miner and $320 per hour for P. Scott Neville for complex voting rights litigation); *Not on the Guest List Coalition v. City of Chicago,* No. 96 C 2642, 1999 WL 350655, at *1 (N.D. Ill. May 19, 1999) ($300 per hour to Edward T. Stein); *Gayton v. Kapus,* 181 F.R.D. 573, 580 (N.D. Ill. 1998) (award of $300 per hour to Jeffrey Haas); *Quinones v. City of Chicago,* No. 91 C 3291, 1995 WL 656690, at *6 (N.D. Ill. Nov. 6, 1995) ($300 per hour to Kenneth Flaxman). Even adjusting for the fact that some of these awards were made a few years ago, they in no way support the rates claimed by Medina's counsel. Indeed, in one of those cases, *Not on the Guest List Coalition,* Judge Moran (in mid-1999) approved a rate of $200 for a 1994 law school graduate – a lawyer with an experience level similar to that of Jon Loevy. *See* 1999 WL 350655, at *1-2.

In sum, plaintiff has failed to carry his burden of proving that his attorneys' market rates are those they request.

Plaintiff's counsel have not had their rates determined by a court in any adversary context; their prior fee awards were negotiated. Though the Court agrees with plaintiff that hourly rates set by compromise do not necessarily impose a ceiling on rates set as a result of the

8

adversary process, those rates do provide some evidence regarding what is reasonable here. Last year, in a case in which Jon Loevy says he was lead trial counsel (a point disputed by defendants), *Regalado v. City of Chicago*, 96 C 3634, fees were awarded at hourly rates of $195 for Jon Loevy, $190 for Arthur Loevy, and $165 for Danielle Loevy. *See* Dfdts. Brief, Exh. G.

Based on the evidence that has been submitted, including the agreed-upon rates used in *Regalado* and the rates used for other attorneys in the cases discussed earlier, the Court finds that the appropriate rates in this case are $210 per hour for Jon Loevy and Arthur Loevy and $175 per hour for Danielle Loevy. This is not to say that they might not be able to support higher rates, but only that they have not done so by their submissions in this case.

We move on to determine the hours reasonably spent by counsel working on the case. The time sheets they have presented show that through February 14, 2001, Jon Loevy worked 164.50 hours on the case, Arthur Loevy worked 34.75 hours, and Danielle Loevy worked 6.25 hours. Defendants have made objections to only a few of counsel's time entries, nearly all of which represent conferences among co-counsel. *See* Dfdts. Brief, p. 8.

Conferences among co-counsel regarding strategy and important litigation decisions can improve the quality of decision-making. There are, however, reasonable limits to this principle. This case, though hard-fought, was in no way unusually complicated or difficult; it did not reasonably require three attorneys.[1] Accordingly, charging defendants for the time spent on the case by the third attorney, Danielle Loevy, is unreasonable, except for one instance: her entry for

---

[1] As an aside, we note that although plaintiff contends that the involvement of the third attorney, Danielle Loevy, was "especially" important in discussing the proposed settlement with the plaintiff, *see* Pltf. Mot., p. 18, her time sheets reflect only one such conference, on October 29, 2000, long before the City had made a settlement offer.

February 10, 2000 for her appearance at a status hearing, at which the presence of an attorney for the plaintiff was required. The time for her preparation for the hearing will not be awarded, as it would not have been necessary for one of the attorneys who was working on the case on a day-to-day basis.

The Court rejects defendants' argument that all inter-attorney conference time involving Arthur Loevy should be excluded. The senior Mr. Loevy, though his experience actually practicing law evidently is not much greater than that of his son, undeniably possesses the good judgment and practical wisdom that often comes with age and life experience. The Court does not think that it would be wise to set down a rule that would preclude a younger lawyer from recovering for reasonable time spent conferring with senior attorneys (or senior attorneys from recovering for their time engaging in such conferences). From the Court's observation, the senior Mr. Loevy's counsel was an important moderating influence in the case, and the amount of time spent on conferences with him was in no way unreasonable.

The Court will, however, bar recovery for conferences that involved the entry of a fourth plaintiff's attorney into the case. From the Court's observation, the involvement of the fourth attorney (an experienced civil rights attorney) was not reasonably necessary in this case. For this reason, the Court will deny recovery for Arthur Loevy's time entries for a conference on January 24, 2001 (0.50 hours) and for Jon Loevy's time entries for conferences on January 5, 2001 (estimated 0.25 hours), January 24, 2001 (0.50 hours), and February 7, 2001 (estimated 0.50 hours).

These deductions result in a fee award as follows:

Jon Loevy:     163.25 hours @ $210 per hour:     $34,282

10

| | | |
|---|---|---|
| Arthur Loevy: | 34.25 hours @ $210 per hour: | 7,193 |
| Danielle Loevy: | 1.00 hour @ $175 per hour: | 175 |
| Total: | | $41,650 |

The Court has considered the factors set forth in *Hensley* which may provide a basis for increasing or decreasing a fee award. *See Hensley*, 461 U.S. at 429-30 n.3. None of them provide a basis for altering the award in this case. Plaintiff certainly achieved a good measure of success, but the case, though hotly contested, was an average excessive force case in virtually every respect. Disputes over the scope of discovery are not uncommon in such cases, and that is what most of the significant litigation involved. The attorney's fee that results from the Court's review is an appropriate award in the circumstances present here.

## Conclusion

For the reasons stated above, plaintiff's motion for attorney's fees [Docket Item 47-1] is granted. The Court awards plaintiff attorney's fees of $41,650.00 and expenses of $626.00, for a total of $42,276.00.

MATTHEW F. KENNELLY
United States District Judge

Date: September 14, 2001

11